UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SEAN MICHAEL BOLAND,

                Plaintiff,

v.                                                1:15-CV-1391
                                                   (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS          PETER M. MARGOLIUS
  Counsel for Plaintiff
7 Howard Street
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.              DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this Social Security action filed by Sean Michael Boland ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. No. 10, 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born in 1982, making him 29 years old at the date of the previous final Agency decision that had found him not disabled and 31 years old at the date of the final Agency decision at issue in this appeal. Plaintiff has a ninth grade education, and past work as a fast food clerk and a hole digger. Plaintiff was insured for disability benefits under Title II until September 30, 2012. Generally, Plaintiff alleges disability consisting of a learning disability, memory problems, depression, and acid reflux.

   B.      Procedural History

Plaintiff applied for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on March 8, 2012. In both applications, Plaintiff alleged disability beginning October 1, 2007.[1] Plaintiff's application was initially denied on June 4, 2012, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). On July 18, 2013, Plaintiff appeared at a video hearing before ALJ Mary Sparks. On September 3, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 14-24.) On September 18, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

---

[1]     The ALJ noted that Plaintiff had a previous unfavorable final Agency determination of non-disability that covered the period from his alleged onset date to December 2, 2011, the date of that decision. (T. 15.) The ALJ declined to re-open the application at issue in that previous determination and constrained her review to the period beginning December 3, 2011, the date after that determination. (*Id.*)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 13-21.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 3, 2011, the date after the previous final Agency determination. (T. 16.) Second, the ALJ found that Plaintiff's dysthymic disorder, personality disorder not otherwise specified with avoidant features, and learning disorder not otherwise specified are severe impairments. (T. 16-17.) Third, the ALJ found that Plaintiff's severe impairment does not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 17-18.) More specifically, the ALJ considered Listings 12.00 (mental impairments) and Listing 12.05 (mental retardation). (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, repetitive tasks in low stress occupations defined as those having no more than occasional decision making required and no more than occasional changes in the work setting and may have no more than occasional interaction with the public or coworkers and supervisors.

(T. 18.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 22.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packer, cleaner II, sandwich maker, cafeteria attendant, final assembler, and hand trimmer. (T. 22-23.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts one argument in support of his motion for judgment on the pleadings. Plaintiff argues that the RFC determination was not supported by substantial evidence. (Dkt. No. 10, at 3-4 [Pl. Mem. of Law].) More specifically, Plaintiff argues that

"substantial evidence in the record [specifically opinions from examining psychiatric physician Dr. Schleuderer, consultative examiner Dr. Gindes, Social Worker Clark, and Social Worker Fried] supports a finding that the claimant is limited to simple work with significant repetition, would require work with no changes in the work settings or decision making, and is limited to less than occasional interaction with the others." (*Id.*)

Generally, Defendant asserts one argument in support of her motion for judgment on the pleadings. Defendant argues that the ALJ's mental RFC assessment was supported by substantial evidence, including the treatment records, education records, and the opinion of State Agency psychological consultant Dr. Ferrin (to which the ALJ afforded the greatest weight). (Dkt. No. 11 at 4-8 [Def. Mem. of Law].) More specifically, Defendant argues that, in determining Plaintiff's RFC, the ALJ properly considered and weighed the opinions from Dr. Gindes and Social Worker Fried, that the ALJ's findings were not inconsistent with Dr. Schleuderer's opinion and examination, and that the Global Assessment of Functioning ("GAF") score assessed by Social Worker Clark and Dr. Markarian on one occasion was not controlling evidence of mental disability. (Dkt. No. 11, at 8-14 [Def. Mem. of Law].)

## II.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence

4

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

**III. ANALYSIS**

After carefully considering the matter, the Court answers finds that the ALJ's RFC was supported by substantial evidence for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 4-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Residual functional capacity is defined as follows:

> 'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means [eight] hours a day, for [five] days a week, or an equivalent work schedule.'

*Pardee v. Astrue*, 631 F.Supp.2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitation which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F.Supp.2d at 211 (citing 20 C.F.R. § 404.1545(a)). "When assessing residual functional capacity, administrative law judges must consider 'all of the relevant medical and other evidence.'" *Casey v. Comm'r of Soc. Sec.*, No. 7:13-CV-0947, 2015 WL 5512602, at *10 (N.D.N.Y. Sept. 15, 2015) (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Wojciechowski v. Colvin*, 967 F.Supp.2d 602, 611 (N.D.N.Y. 2013) (citing *LaPorta v. Bowen*, 737 F.Supp. 180, 183 (N.D.N.Y. 1990)). "[W[hat is essential is the evaluation of functional effects of mental impairments on work-related activities such as understanding, carrying out, and remembering instructions; using judgment in making

work-related decisions; responding appropriately to supervision, co-workers, and work situations; and dealing with changes in a routine work setting." *Reynolds v. Colvin*, No. 3:13-CV-0396, 2014 WL 4184729, at *3 (N.D.N.Y. Aug. 21, 2014) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)).

When a treating source opinion is not afforded controlling weight and the ALJ must consider opinions from other acceptable medical sources, the ALJ must consider the following factors: "(1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent [the] opinion is with [the] record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors." *Atkyns v. Colvin*, No. 6:13-CV-0161, 2014 WL 4637090, at *7 (N.D.N.Y. Sept. 16, 2014) (citing 20 C.F.R. § 404.1527(c)). "There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013). Additionally, in general, "the weight assigned to a nonexamining source's opinions 'depends on the degree to which they provide supporting explanations for their opinions.'" *Nieves v. Astrue*, No. 3:08-CV-0311, 2009 WL 2601237, at *4 (N.D.N.Y. Aug 20, 2009) (quoting 20 C.F.R. § 416.927(d)(3)).

Plaintiff argues that the opinions from examining physician Dr. Schleuderer, examining physician Dr. Gindes, and treating Therapist Fried, as well as the fact that Plaintiff had a single GAF score of 50 from Therapist Clark, provide substantial evidence to support the conclusion that Plaintiff had mental limitations that should have produced a finding that he was disabled. However, Plaintiff's argument is flawed for two main reasons.

First, although Plaintiff asserts that substantial evidence supports a contrary conclusion, that is not the standard this Court uses to assess whether remand is merited. Even if Plaintiff

8

could produce substantial evidence to support his assertions, the ALJ's findings may still be upheld where substantial evidence supports her conclusions and she has properly weighed the evidence and reconciled any inconsistencies. *Petell v. Comm'r of Soc. Sec.*, No. 7:12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *Schlichting v. Astrue*, 11 F.Supp.3d 190, 204 (N.D.N.Y. 2012) (indicating that where "the Commissioner's decision 'rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner'"); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). The relevant inquiry this Court must make is therefore whether the ALJ's findings are supported by substantial evidence, not whether Plaintiff can produce substantial evidence contrary to the ALJ's findings.

Second, the Court agrees with Defendant that the ALJ's consideration and weighing of the opinion evidence was supported by substantial evidence. Each opinion that Plaintiff asserts supported a finding of disability will be discussed in turn.

### A. Dr. Gindes

The ALJ afforded little weight to the opinion from consultative examiner Dr. Gindes, finding it was "done for the sole purpose of obtaining disability, [and was] not consistent with the overall record including claimant's own reports to other treating physicians or his functioning." (T. 20.) The ALJ noted that "claimant also presented himself in a much less functional manner than reported to others or observed by treating sources," that mental status examinations were mostly within normal limits on other examinations with the exception of

9

some appearance of depression and blunted affect, and that there were several instances where Plaintiff denied feeling depressed. (*Id.*)

On May 21, 2012, Dr. Gindes observed Plaintiff was cooperative with adequate social skills, related in a very subdued manner, appeared overweight, unshaven and casually dressed, and had a slouched posture, lethargic motor behavior, mumbled and monotonous speech, a tense and depressed affect, dysthymic mood, appropriate eye contact, adequate expressive and receptive language skills, and a coherent and goal-directed thought process. (T. 302-03.) Dr. Gindes also observed that he had significantly impaired attention and concentration with poor performance on serial threes testing, mildly impaired recent and remote memory, intellectual functioning estimated in the deficient range, and a somewhat limited general fund of information. (T. 304.) Dr. Gindes opined that Plaintiff could follow and understand simple directions and instructions and perform simple tasks independently and maintain a regular schedule and learn new tasks, but was not likely to be able to maintain attention and concentration, perform complex tasks independently, make appropriate decisions, relate adequately with others, or appropriately deal with stress. (*Id.*)

As the ALJ indicated, Plaintiff's presentation at the consultative examination with Dr. Gindes is in stark contrast with his presentation at typical examinations for treatment. Plaintiff was noted to be comfortable-appearing and cooperative while at the emergency department for a finger injury on March 13, 2012. (T. 263.) On May 16, 2012 (six days prior to Dr. Gindes' exam), Therapist Clark noted that, although Plaintiff appeared depressed and of limited intellect, he reported an improving ability to engage in and complete independent chores without reminders. (T. 288.) Therapist Clark also noted that previous psychological testing had raised questions of malingering and indicated she would continue to explore whether Plaintiff was

10

seeking secondary gain from his depression given his struggle to follow through with treatment between sessions. (*Id.*) On May 23, 2012 (two days after Dr. Gindes' exam), Therapist Clark noted that, although Plaintiff continued to have self-negative thoughts, he reported enjoying planning birthday parties for his children and gardening. (T. 337.) Therapist Clark noted that Plaintiff needed to work on stopping unrealistic expectations for himself and counteracting his 'learned helplessness,'[2] as well as that he displayed "limited internal motivation to change or improve his life." (T. 337-38.) On August 20, 2012, Therapist Clark noted that Plaintiff had reported getting more household chores done independently, though he continued to struggle with identifying and utilizing adaptive coping skills to address his depression; he was doing more gardening and found joy from preparing for family parties, but continued to have unrealistic expectations that one day all his problems would simply go away. (T. 333-34.) Therapist Clark noted he was being discharged from therapy, indicating he should take a "therapeutic break" for 90 days and then reapply for service if he required further support. (T. 333.) On September 6, 2012, it was noted that he was closed out at Ulster County Mental Health due to his therapist leaving and the fact that he was psychiatrically stable. (T. 331.)

Plaintiff did not seek mental health treatment again until April 16, 2013; Nurse Practitioner Kim noted that he had been stable on Wellbutrin for three years, had a sedentary lifestyle, displayed signs of 'learned helplessness,' and had poor coping skills. (T. 359.) Nurse Practitioner Kim noted that Plaintiff had spent most of the session venting frustration over his

---

[2] Learned helplessness is defined as "a mental state in which an organism forced to bear aversive stimuli, or stimuli that are painful or otherwise unpleasant, becomes unable or unwilling to avoid subsequent encounters with those stimuli, even if they are 'escapable,' presumably because it has learned that it cannot control the situation." *See Jeannette L. Nolan*, Learned Helplessness, ENCYCLOPAEDIA BRITANNICA (Dec. 24, 2015), available at https://www.britannica.com/topic/learned-helplessness (last visited Apr. 7, 2017).

disability denials and that he was ambivalent and vague with some evidence of cognitive impairment and decreased complex thinking. (*Id*.) Nurse Practitioner Kim indicated that it was not evident that Plaintiff was disabled and she encouraged him to seek VESID services.[3] (*Id*.) She observed that he was casually dressed, calm and cooperative though guarded and cagey, and had slow speech, a constricted affect, an 'okay' mood, intact memory and concentration, and fair insight and judgment due to limited intelligence. (T. 360.) On May 28, 2013, Plaintiff reported no improvement with an increased dose of Wellbutrin, indicating that he experienced increased anxiety when he felt rushed and that he isolated himself to cope. (T. 355.) However, Nurse Practitioner Kim observed that he was dressed in casual attire, was cooperative, and had a victimized and helpless demeanor, slow speech, basic responses, an 'okay' mood, constricted and dissociative affect, a concrete and linear thought process, limited to poor insight, fair judgment, and grossly intact cognition. (*Id*.)

Although the treatment evidence shows some limitations, they do not show the degree of restriction that Plaintiff displayed on the exam Dr. Gindes conducted. State Agency medical consultant Dr. Ferrin, on whose opinion the ALJ primarily relied, noted in her May 29, 2012 review of the evidence that Plaintiff's results on the digit span test conducted by Dr. Gindes (assessing attention and concentration) "appear to be invalid and a pattern suggestive of lack of full participation with the exam." (T. 323.) Dr. Ferrin also noted gross inconsistencies between the activities of daily living that Plaintiff reported to Dr. Gindes and those that he reported to other sources throughout the record. (*Id*.) Dr. Ferrin indicated that these inconsistencies and

---

[3] The Office of Vocational and Educational Services for Individuals with Disabilities ("VESID"), through the New York State Education Department, provides vocational assistance to qualifying individuals to assist them in obtaining and maintaining employment. *See Reynolds v. Comm'r of Soc. Sec.*, No. 1:11-CV-0778, 2012 WL 2050410, at *2 (N.D.N.Y. June 6, 2012).

suggestions of less-than-full effort on the consultative exam raised questions regarding the credibility of Plaintiff's self-reports and the exam. (*Id.*) A review of the evidence as a whole shows that the reasons that the ALJ provided for declining to rely on Dr. Gindes' opinion are supported by substantial evidence and there was therefore no error in the ALJ's failure to adopt the greater limitations included in that opinion.

### B. Therapist Fried

The ALJ afforded little weight to the opinion from treating Therapist Fried, finding it inconsistent with Therapist Fried's own treatment records and unsupported by the record as a whole. (T. 20.) When weighing opinions from 'other sources' who are not medically acceptable sources under the regulations, the ALJ is instructed to consider numerous factors similar to those used for assessing opinions from medically acceptable sources, including the nature and extent of the relationship between the source and the claimant, the supporting explanation the source provides, and the consistency of the opinion with the evidence in the record as a whole. SSR 06-03p; *Saxon v. Astrue*, 781 F.Supp.2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F.Supp.2d 355, 344 (E.D.N.Y. 2010)).

On June 16, 2013, Therapist Fried opined that Plaintiff had marked limitations in the following abilities: understanding, remembering, and carrying out simple and complex instructions; making judgment on simple and complex work-related decisions; interacting appropriately with supervisors; and responding appropriately to usual work situations and to changes in a routine work setting. (T. 349-50.) Therapist Fried also opined that Plaintiff had moderate limitations in his abilities to interact appropriately with the public and with co-workers. (T. 350.)

The ALJ noted that Therapist Fried's treatment notes did not document specific mental status examinations that correlated to her opinion that Plaintiff had primarily marked limitations. (*Id.*) This is an accurate characterization of the record. Therapist Fried treated Plaintiff on the following dates: May 18, 2013; June 2, 2013; June 15, 2013; and July 6, 2013. (T. 352, 354, 356-57.) On May 18, 2013, she noted that he was casual, calm, cooperative (though vague and guarded), and had a flat affect, low speech, poor memory and judgment, and no insight. (T. 357.) However, on June 2, 2013, she noted that he opened up more, smiled at times, and discussed his history in detail. (T. 354.) Similarly, on June 15, 2013, Therapist Fried noted that, although he felt frustrated by his apathy and lack of energy, he was becoming more comfortable opening up in the sessions, had a wider range of affect, and was more verbal. (T. 354.) A note on July 6, 2013 indicated little more than that he was "feeling no different" on his medications. (T. 352.) Nothing in these treatment records, or in the other evidence previously discussed, is suggestive of the marked limitations Therapist Fried opined. The ALJ properly considered the required factors for evaluating opinion evidence from "other sources" and her decision to afford Therapist Fried's opinion little weight is supported by substantial evidence.

C. **February 23, 2012 GAF Score**

In terms of the GAF score assessed by Therapist Clark and Dr. Markarian on February 23, 2012, Defendant is correct in noting that there was no error in the ALJ's failure to rely on that specific score. (Dkt. No. 11, at 13-14 [Def. Mem. of Law].) While they are considered opinion evidence that must be considered, GAF scores are not meant to represent an individual's long-term functioning, but are rather a 'snapshot' of his functioning at a given time. *See Trombly v. Colvin*, No. 8:15-CV-0567, 2016 WL 5394723, at *14 (N.D.N.Y. Sept. 27, 2016) (accepting that "a GAF score is only a snapshot of estimated functioning at the time the score is

14

assessed") (citing *Schneider v. Colvin*, No. 3:13-CV-0790, 2014 WL 4269083, at *4 (D. Conn. Aug. 29, 2014); *Rock v. Colvin*, 628 F. App'x 1, 4 n.3 (2d Cir. 2015); *Maniella v. Colvin*, 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014)). Additionally, GAF scores have been removed from the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders and the Administration, in a July 31, 2013 memorandum, indicated that, although GAF scores are opinion evidence, the ALJ should rely more heavily on the clinician's description rather than the numerical range. *See Rock,* 628 F. App'x at 4 n.3; *Maniella,* 2014 WL 183957, at *5. As Defendant notes, other treatment notes showed higher GAF scores consistent with less serious mental limitations. (Dkt. No. 11, at 13-14 [Def. Mem. of Law].) The single GAF score of 50 from February 2012 therefore does not constitute evidence that undermines the ALJ's findings of more moderate mental impairment.

### D. Dr. Schleuderer

The June 17, 2010 examination and opinion from Dr. Schleuderer is also not persuasive evidence contrary to the ALJ's findings. As noted above in Part I.B. of this Decision and Order, the ALJ explicitly constrained her review of Plaintiff's claim to the period from December 3, 2011 (the date after the date of a final Agency determination that Plaintiff was not disabled based on a previous application) to the date of her own decision. (T. 15-16.) Dr. Schleuderer's examination and opinion were therefore related to a period in which the Agency had already found Plaintiff to be not disabled. The ALJ who rendered that decision declined to afford great weight to Dr. Schleuderer's opinion due to "a presentation of symptoms now called into question by the subsequent findings of malingering." (T. 68.) Given the fact that the Agency considered Dr. Schleuderer's opinion when making that previous unfavorable determination and that the ALJ explicitly declined to re-open the period of the previous application, it would not be proper

15

for this Court to make contradictory findings regarding the same evidence, particularly given the fact that, as the ALJ points out, there continued to be some suspicion of secondary gain and lack of motivation on Plaintiff's part to improve his symptoms. (T. 20-21.). *See also Saxon*, 781 F.Supp.2d at 99 (finding that the court did not have the authority to review the propriety of the ALJ's decision not to re-open the previous application due to the impact of *res judicata* because the ALJ did not constructively re-open the claim and the plaintiff had not been denied due process, and noting that the plaintiff had not appealed the Appeals Council's denial of review of that previous ALJ decision and the ALJ current claim had explicitly refused to re-open the previous application). Plaintiff's assertions that Dr. Schleuderer's opinion constituted evidence of disability is improper because it is contrary to the findings in the final Agency determination on his previous application, findings which Plaintiff did not appeal. There was therefore no error in the ALJ's failure to consider or rely on Dr. Schleuderer's opinion to the extent it may have supported Plaintiff's argument.

### E. Dr. Ferrin

The ALJ afforded the greatest weight to the May 29, 2012 opinion from State Agency medical consultant Dr. Ferrin that Plaintiff remained able to understand and follow simple directions and instructions, adhere to a regular schedule, relate adequately with others, and adapt to simple changes because "her thorough summation of the medical evidence continues to be the most consistent with the totality of the record." (T. 21, 324.) Dr. Ferrin found moderate limitations in the following abilities: understanding, remembering, and carrying out detailed instructions; working in coordination with or proximity to others without being distracted by them; completing a normal workday or workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length

of rest periods; and accepting instructions and responding appropriately to criticism from supervisors. (T. 321-22.) Dr. Ferrin provided a discussion of pertinent evidence she considered, including a notation that Dr. Gindes' opinion appeared to be based on invalid examination results suggestive of lack of full participation in the exam and reports of daily activities and functioning that were not consistent with Plaintiff's reports to other sources throughout the record. (T. 323.) Based on Dr. Ferrin's detailed explanations, the consistency of her opinion with the overall mental health treatment evidence in the record as a whole, and the fact that the ALJ provided proper reasons supported by substantial evidence for rejecting the opinions from Dr. Gindes and Therapist Fried (as already discussed previously), the ALJ was entitled to rely on Dr. Ferrin's opinion when assessing the RFC. *Nieves*, 2009 WL 2601237, at *4; *cf. Storms v. Comm'r of Soc. Sec.*, No. 5:14-CV-1020, 2016 WL 1057044, at *7 (N.D.N.Y. Mar. 14, 2016) (finding the opinion of the non-examining State Agency medical consultant could not serve as substantial evidence because it was not "supported by medical reports of examining physicians" or "the medical evidence of Plaintiff's mental disabilities").

Because the ALJ properly rejected the opinions from Dr. Gindes and Therapist Fried and instead relied on the opinion of Dr. Ferrin and the treatment evidence as a whole that failed to show more than moderate mental functional limitations, the ALJ's RFC assessment was supported by substantial evidence. Plaintiff's argument that he should have been limited to no decision-making or changes in work setting and less than occasional interaction with others is not consistent with the treatment evidence, and the ALJ did not err in declining to find Plaintiff so severely limited.

For all these reasons, the ALJ's RFC assessment was supported by substantial evidence, and remand is not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 27, 2017
Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge